UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| PATRICIA MONTANA, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> MIGUEL ANGEL CARDONA, *et al.*, <br><br> Defendants. | Civil Action No. 23-cv-775 (TSC) |

## MEMORANDUM OPINION

Plaintiffs, who are parents of school-aged children, objected to a mandatory survey given to their children without prior parental notice or consent, and filed complaints with the U.S. Department of Education's ("Department") Student Privacy Policy Office. After almost two years elapsed without a resolution, Plaintiffs sued the Department and its Secretary, seeking a writ of mandamus and injunctive relief under the Administrative Procedure Act ("APA").

I.  BACKGROUND

Plaintiffs, whose children are enrolled in schools within the Cedar Grove School District ("District") in New Jersey, seek mandamus and injunctive relief under the Protection of Pupil Rights Amendment ("PPRA") and the APA. Am. Compl., ECF No. 15 ¶¶ 26–47. They allege that they filed complaints with the Department's Student Privacy Policy Office because the District violated the PPRA by administering a mandatory survey to their children seeking sensitive and protected information without parental notice or consent. *Id.* ¶ 5. Plaintiff Montana also filed a complaint with the New Jersey Department of Education, which concluded that the District violated state law. *Id.* ¶¶ 7–8. Having received no response from the

Department for about a year, Plaintiffs reached out to demand a resolution. *Id.* ¶ 10. During the following year, Plaintiffs periodically communicated with the Department about their investigation, but, because they still had not received a resolution, Plaintiffs filed this suit. *See id.* ¶¶ 10–18; *see also* Compl., ECF No 1.

Defendants moved to dismiss both the mandamus and APA claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), ECF No. 16. Plaintiffs cross-moved for summary judgment on both claims, ECF No. 19.

## II. LEGAL STANDARD

### A. Motion to Dismiss

#### i. *Federal Rule of Civil Procedure 12(b)(1)*

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss any claim for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Article III standing is a fundamental aspect of subject matter jurisdiction. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). In assessing standing, the court must "accept all of the factual allegations in the complaint as true," *Jerome Stevens Pharms. Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (citation omitted), and construe the complaint "in the light most favorable to" the non-moving party, *Navab-Safavi v. Glassman*, 637 F.3d 311, 382 (D.C. Cir. 2011). Because the court has "an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority," however, the "factual allegations in the complaint . . . will bear closer scrutiny [than those allegations would] in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of Fraternal Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001) (quotation marks and citation omitted).

*ii.     Federal Rule of Civil Procedure 12(b)(6)*

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In other words, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The court presumes the truth of the complaint's factual allegations as well under Rule 12(b)(6), *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000), but need not "accept as true 'a legal conclusion couched as a factual allegation,'" nor "inferences [that] are unsupported by the facts set out in the complaint," *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (citations omitted).

Although APA claims are typically resolved on motions for summary judgment, the court may resolve an APA claim on a motion to dismiss if the plaintiff's claim "can be resolved with nothing more than the statute and its legislative history." *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 271 F.3d 262, 266 (D.C. Cir. 2001). If the plaintiff challenges the "rule-making process" or the agency's application of a "rule in specific cases," however, resolution on a motion to dismiss is improper. *Id.* at 267.

**B.     Motion for Summary Judgment**

*i.     Mandamus claim*

Under Federal Rule of Civil Procedure 56, courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if "a dispute over it

might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Anderson*, 477 U.S. at 248). The party seeking summary judgment bears the burden to provide evidence showing "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

  ii. *APA claim*

Federal Rule of Civil Procedure 56(a), however, does not apply to motions for summary judgment in cases seeking APA review "because of the court's limited role in reviewing the administrative record." *Coe v. McHugh*, 968 F. Supp. 2d 237, 239 (D.D.C. 2013). Instead, the court must decide as a matter of law "whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Id.* at 240. Courts are "highly deferential" to agency action, *Env't Def. Fund, Inc. v. Costle*, 657 F.2d 275, 283 (D.C. Cir. 1981), only setting it aside if the action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2).

### III. ANALYSIS

**A.** **Establishing Article III Standing**

It is an "essential and unchanging part of the case-or-controversy requirement" that, to sue in federal court, a plaintiff must establish Article III standing. *Lujan*, 504 U.S. at 560. To demonstrate standing at the motion to dismiss stage, a plaintiff must plead (i) an "injury in fact," that is (ii) "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court," and that (iii) is "likely" to be "redressed by a favorable decision." *Id.* at 560–61 (formatting modified). Each element "must

be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 561 (citation omitted). At the motion to dismiss stage, that means "the complaint must contain 'sufficient factual matter, accepted as true,' to support an inference of standing 'that is plausible on its face.'" *Air Excursions LLC v. Yellen*, 66 F.4th 272, 277 (D.C. Cir. 2023) (quoting *Iqbal*, 556 U.S. at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). General factual allegations "may suffice" because the court presumes "that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (citation omitted).

In a case with multiple plaintiffs, like this one, as long as "standing can be shown for at least one plaintiff," the court "need not consider the standing of the other plaintiffs to raise the claim." *Del. Dep't of Nat. Res. & Env't Control v. EPA*, 785 F.3d 1, 8 (D.C. Cir. 2015) (quoting *Mountain States Legal Found. v. Glickman*, 92 F.3d 1228, 1232 (D.C. Cir. 1996)). But standing "is not dispensed in gross." *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) (formatting modified; citations omitted). Rather, "a plaintiff must demonstrate standing for each claim." *Id.* (citation omitted). Thus, at least one Plaintiff here must have Article III standing for the mandamus claim and the APA claim.

  *i.* *Injury in fact*

"Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021). That is because "Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." *Id.* (citation omitted).

A plaintiff has "standing to challenge" an agency's "failure . . . to abide by a procedural requirement" "if that requirement was designed to protect" the plaintiff's "threatened concrete interest." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 664 (D.C. Cir. 1996) (citation and internal quotation marks omitted). In determining whether a plaintiff has suffered a concrete harm, "courts should assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts," such as "reputational harms, disclosure of private information, and intrusion upon seclusion." *TransUnion LLC*, 141 S. Ct. at 2204. "Congress's views may" also "be 'instructive'" in this analysis: if Congress decides "to impose a statutory prohibition or obligation on a defendant, and to grant a plaintiff a cause of action to sue over the defendant's violation of that statutory prohibition or obligation," "Congress may 'elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Id.* at 2204–05 (citation omitted); *see also United States v. Texas*, 599 U.S. 670, 677, 682–83 (2023) (citation omitted) (plaintiffs generally lack "a judicially cognizable interest in the prosecution of another," but may be able to establish injury in fact if, for example, Congress "authorize[s] suits against the Executive Branch," "authorize[s] the Judiciary to enter appropriate orders requiring" such prosecutions, or if an agency engages in "an extreme case of non-enforcement" of its statutory responsibilities).

Even where Congress creates a private cause of action, however, the plaintiff still must "have been concretely harmed by [the] defendant's statutory violation" to have standing. *TransUnion LLC*, 141 S. Ct. at 2205. For example, a plaintiff in Hawaii may not sue a company for violating federal environmental law and polluting land in Maine, because that "violation did

not personally harm the plaintiff in Hawaii," "[e]ven if Congress affords" that plaintiff "a cause of action." *Id.* at 2205–06.

    ii.    *Traceability*

The second element of standing--causation or traceability--requires that the defendant bears some responsibility for the plaintiff's injury. *See Lujan*, 504 U.S. at 560–61. Because Plaintiff alleges an "archetypal procedural injury," this element bears particular importance. *Am. Fuel & Petrochemical Mfrs. v. EPA*, 937 F.3d 559, 592 (D.C. Cir. 2019). A plaintiff "need not show that a harm to a member 'has in fact resulted from the [agency's] procedural failures,'" but rather that "there is a 'substantial probability'" that the challenged agency action caused the plaintiff's injury. *Id.* (citation omitted). This inquiry requires two causal links: one connecting the procedural deficiency to the substantive agency action, and another connecting that substantive agency action to the plaintiff's injury. *Ctr. for Biological Diversity v. EPA*, 861 F.3d 174, 184 (D.C. Cir. 2017). As to the first link, the plaintiff must "show that the procedural step was connected to the substantive result." *Massachusetts v. EPA*, 549 U.S. 497, 518 (2007) (citation omitted).

    iii.    *Redressability*

The final standing requirement—redressability—is "relaxed" in cases involving procedural injuries. *Ctr. for Biological Diversity*, 861 F.3d at 185. A plaintiff need only show that the agency revisiting its action "*could*" lead to "a different conclusion." *Id.*; *accord WildEarth Guardians v. Jewell*, 738 F.3d 298, 306 (D.C. Cir. 2013). Causation and redressability are "closely related" yet distinct: "causation focuses on the 'connection between the assertedly unlawful conduct and the alleged injury' whereas redressability focuses on the

'connection between the alleged injury and the judicial relief requested.'" *West v. Lynch*, 845 F.3d 1228, 1235–36 (D.C. Cir. 2017) (citation omitted).

**B.     Plaintiffs Lack Standing**

Plaintiffs claim their injury is to their procedural right "to have their PPRA complaints investigated, processed, reviewed, and adjudicated" by the Department.  Mem. in Supp. of Mot. for Summ. J., ECF No. 19-1 at 15–16 ("Cross Motion") (quoting Am. Compl. ¶ 37); *see* 20 U.S.C. § 1232h(f) (requiring the Secretary of Education to "establish or designate an office and review board" to "investigate, process, review, and adjudicate violations of [PPRA] rights").  Put another way, Plaintiffs sued because they believe Defendants have taken too long to resolve their complaints.  Under the framework established in *TransUnion LLC*, Plaintiffs have suffered a concrete injury only if there is a common-law tort analogue or Congress has authorized a private cause of action to sue over Defendant's alleged unreasonable delay in adjudicating Plaintiffs' complaints.  141 S. Ct. at 2204–06.  But Plaintiffs have cited no common-law tort that allows them to sue for unreasonable delay in any adjudicative process, nor have they cited any authority indicating Congress created a private cause of action in the PPRA.[1]

---

[1] The parties acknowledge the possibility that the PPRA could be enforceable through 42 U.S.C. § 1983.  Pls.' Reply in Supp. of Mot. for Summ. J., ECF No. 23 at 11 n.9; *see* Defs.' Reply in Supp. of Mot. to Dismiss, ECF No. 21 at 8–9 n.4.  But that possibility has no bearing on the standing analysis.  Statutory violations are enforceable through § 1983 unless Congress indicated it intended to "foreclose § 1983 remedies," regardless of whether Congress created other "comprehensive" "remedial devices" in the statute.  *See Wright v. City of Roanoke Redevelopment & Hous. Auth.*, 479 U.S. 418, 424–28 (1987) (citation omitted).  By contrast, the concrete injury inquiry asks whether Congress chose to "grant a cause of action" to the plaintiff to enforce the defendant's obligation.  *See TransUnion LLC*, 141 S. Ct. at 2204.  *Cf. Parents Protecting Our Child., UA v. Eau Claire Area Sch. Dist.*, 657 F. Supp. 3d 1161, 1175 (W.D. Wisc. 2023) (explaining that, regardless of "whether there is a private right of action under PPRA that can be brought under § 1983, it is unnecessary to reach those arguments because plaintiff has failed to show that it has suffered . . . an injury in fact").

Nor could Plaintiffs establish Article III standing by arguing that they were injured by the survey because they cannot show traceability or redress for that harm. The Department's delay in adjudicating Plaintiffs' complaints is unrelated to the District sending out the survey to students without parental notice or consent; rather, the Department's adjudication is a remedy for the District's action. *See Massachusetts*, 549 U.S. at 518. Nor could ordering Defendants to adjudicate Plaintiff's complaints on an accelerated timeline lead to "a different conclusion" regarding whether the surveys violated the PPRA. *See Ctr. for Biological Diversity*, 861 F.3d at 185. Moreover, the New Jersey Department of Education already adjudicated Plaintiff Montana's complaint, concluding that the District violated state law, Am. Compl. ¶¶ 7–9, and requiring the surveys and their results be discarded, *id.* Ex. 5 at 4. Consequently, even if Defendants find that the District also violated federal law, it is not "substantially likely" that Defendants would do anything more to remedy the harm Plaintiffs' suffered simply by reiterating the state agency's conclusion. *See Reed v. Goertz*, 143 S. Ct. 955, 960 (2023). It is unsurprising, therefore, that Plaintiffs deny that their injury is the District's decision to send out the surveys. Cross Motion at 19; *accord id.* at 20, 25.

Instead, Plaintiffs argue that they have standing based on Defendants' delay because the PPRA's requirement that Defendants adjudicate violations "was designed to protect" Plaintiffs. *Id.* at 16–17 (quoting *Fla. Audubon Soc'y*, 94 F.3d at 664). Relatedly, they claim that whether the PPRA creates a private cause of action "has nothing to do with whether" they have suffered a concrete injury. *Id.* at 20. Plaintiffs, however, ignore the Supreme Court's decision in *TransUnion LLC*, failing to cite it a single time in its Cross Motion, and instead citing pre–*TransUnion LLC* cases. And, as noted above, under *TransUnion LLC*, Plaintiffs have suffered a concrete injury only if there is a common-law tort analogue for their injury or Congress has

authorized a private cause of action to sue over Defendant's alleged unreasonable delay in adjudicating Plaintiffs' complaints. 141 S. Ct. at 2204–06. That Congress may have designed the PPRA to protect students and parents is not dispositive, or even "instructive," unless Congress also chose to "grant a plaintiff a cause of action to sue over the defendant's violation of that statutory prohibition or obligation." *Id.* at 2204.

Indeed, Plaintiff's only mention of *TransUnion LLC* is in their Reply, in which they argued that the PPRA "protects the long-recognized, concrete interest of parents in the education of their children." Pls.' Reply in Supp. of Mot. for Summ. J., ECF No. 23 at 8 & n.6 ("Pls.' Reply"). But, as Plaintiffs themselves reiterate several times, their alleged injury is in Defendants' delay in adjudicating their complaints—not in the District allegedly violating the PPRA's parental-rights provisions. *See* Cross Motion at 19; *accord id.* at 20, 25.

Plaintiffs also argue that, under Defendants' theory, a plaintiff would not have standing even if Defendants "flat-out refused to fulfill" their "statutory obligation" to investigate and adjudicate violations of the PPRA. Cross Motion at 25; *accord* Pls.' Reply at 5–6. Not so. As the Supreme Court explained just last term in *United States v. Texas*, a plaintiff may have standing if an agency engages in "an extreme case of non-enforcement" of its statutory responsibilities. 599 U.S. at 682–83.

## IV.     CONCLUSION

For the foregoing reasons, the court will GRANT Defendants' Motion to Dismiss and DENY Plaintiffs' Motion for Summary Judgment as moot. An Order will accompany this Memorandum Opinion.

Date: March 26, 2024

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge